UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VALERIE W.,

                              Plaintiff,

                    v.

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.

_____

        DECISION AND ORDER

        19-CV-1442L

        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

        On October 31, 2016, plaintiff, then fifty-two years old, filed an application for a period of disability and disability insurance benefits, alleging disability beginning January 26, 2015. (Administrative Transcript, Dkt. #4 at 12). Her application was initially denied. Plaintiff requested a hearing, which was held October 23, 2018 via videoconference before Administrative Law Judge ("ALJ") John R. Allen. The ALJ issued an unfavorable decision on November 14, 2018. (Dkt. #4 at 12-23). That decision became the final decision of the Commissioner when the Appeals Council denied review on August 28, 2019. (Dkt. #4 at 1-3). Plaintiff now appeals.

        The plaintiff has moved for remand of the matter for further proceedings (Dkt. #6), and the Commissioner has cross moved (Dkt. #9) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's health records, reflecting treatment for a history of seizures, history of cerebrovascular accident (sudden death of brain cells due to a stroke), and adjustment disorder with depressed mood, which the ALJ determined together comprised a severe impairment not meeting or equaling a listed impairment. (Dkt. #4 at 15).

Applying the special technique, the ALJ found that plaintiff has a moderate limitation in understanding, remembering and applying information, no limitation in social interaction, a moderate limitation in concentration, persistence and pace, and no limitation in adapting or managing herself. (Dkt. #4 at 16).

Upon review of the record, the ALJ determined that plaintiff retains the residual functional capacity ("RFC") to perform work at all exertional levels, but cannot work at unprotected heights, around hazardous machinery, or in hazardous environments. She cannot climb ladders, ropes, or scaffolds. She is limited to unskilled, simple, repetitive tasks, with no fast-paced or time-limited tasks. (Dkt. #4 at 17).

When asked at the hearing whether a person with this RFC could perform plaintiff's past relevant work as a receptionist, secretary or administrative assistant, vocational expert Stephanie R. Archer testified that they could not, as these positions were semi-skilled. When asked if there

were other positions a person with this RFC could perform, Ms. Archer identified the representative medium-exertion positions of cleaner and store laborer, and the light-exertion position of sales attendant. (Dkt. #4 at 23). The ALJ accordingly found plaintiff "not disabled."

## I. The ALJ's Step Two Finding

Plaintiff argues that the ALJ erred at step two in declining to consider whether plaintiff's right shoulder tear and right shoulder internal derangement disorder were severe impairments, and in failing to assess the limitations on plaintiff's RFC posed by those conditions.

Notwithstanding the ordinary meaning of the word "severe," the second step's evidentiary requirement is *de minimis*, and is intended only to screen out the truly weakest of cases. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Thus, a step two finding of "not severe" is only appropriate where "the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect'" on an individual's ability to perform basic work activities. *Rosario v. Apfel*, 1999 U.S. Dist. LEXIS 5621 at *14 (E.D.N.Y. 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," and they include physical, postural and sensory functions, as well as mental functions. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, although the ALJ briefly mentioned plaintiff's testimony concerning a "bicep tear" in his decision, he did not discuss plaintiff's arm and shoulder injuries at step two, and does not appear to have considered them in his analysis of the limitations caused by plaintiff's severe and non-severe impairments.

According to the record, plaintiff initially presented with right shoulder pain in or around November 28, 2017, which she reported had begun in October 2017 and grown progressively worse, causing pain and limited range of motion. (Dkt. #4 at 595-96). On examination, plaintiff's

treating nurse practitioner identified right shoulder crepitation ("popping" in the joint), tenderness, diminished strength and limited range of motion. (Dkt. #4 at 597). Plaintiff was treated with right shoulder corticosteroid injections in November 2017, December 2017 and January 2018, with no relief, and consistently exhibited diminished strength and range of motion, along with positive apprehension test (suggestive of tearing in the rim of the shoulder socket that may involve the biceps tendon), Hawkins impingement sign (suggestive of humeral impingement or rotator cuff tendonitis) and positive Neer impingement test. (Dkt. #4 at 597, 600-608).

An MRI revealed a superior labrum anterior to posterior ("SLAP") lesion (an injury where the biceps tendon attaches to shoulder joint cartilage), a partial rotator cuff tear, a paralabral cyst (swelling around the shoulder socket), and evidence of anterior dislocation. (Dkt. #4 at 605, 635-36). Over the ensuing months, plaintiff continued to show diminished strength and range of motion in her dominant right arm. (Dkt. #4 at 608-10, 614-15, 617-19). On July 16, 2018, plaintiff underwent arthroscopic surgery, debridement, biceps tenodesis (a surgical procedure to treat biceps tendonitis), acromioplasty (a procedure to relieve impingement in the shoulder joint), and distal clavicle resection (removal of the outer end of the collarbone). (Dkt. #4 at 633-34).

At surgical follow-up appointments, plaintiff continued to exhibit tenderness, diminished strength and limited range of motion in her right shoulder. However, the record does not contain any long-term followup records or reflect any subsequent objective testing of plaintiff's right arm and shoulder. (Dkt. #4 at 621-22, 639-41).[1] At her hearing on October 23, 2018, plaintiff testified

---

[1] Although plaintiff did receive medical treatment in the months after her shoulder surgery, these visits were focused on treating a subsequent left tibia fracture. (Dkt. #4 at 646-48). The Court declines the Commissioner's invitation to assume that because plaintiff and her care providers did not discuss or identify abnormalities in her right arm and shoulder while she was undergoing treatment for a broken leg, it was because her right arm and shoulder impairments had been wholly resolved.

4

that it was still difficult for her to use her right arm or lift more than ten pounds with it. (Dkt. #4 at 51).

In light of the evidence of record that plaintiff exhibited pain, diminished range of motion and diminished strength in her dominant right arm for months both before her surgery in July 2018, with continued complaints of impaired function thereafter, the ALJ erred by failing to assess whether plaintiff's right and shoulder impairments were severe, and whether they met the durational requirement and resulted in limitations to plaintiff's ability to perform the postural and/or exertional requirements of work during the relevant period.

Although the failure to find an impairment to be severe at step two may be harmless error where the ALJ later considers that impairment in subsequent steps of his analysis, here the ALJ did not address or analyze plaintiff's right arm and shoulder diagnoses at any point in his RFC determination. *See Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013). A thorough consideration of plaintiff's dominant right upper extremity limitations had the potential to significantly alter the ALJ's finding that plaintiff had the RFC to perform the lifting, carrying, reaching, pushing, pulling, handling and fingering requirements of work at all exertional levels, including the light and/or medium-exertion positions identified by the vocational expert at plaintiff's hearing. Remand is therefore required.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #6) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #9) is denied, and the matter is remanded for further proceedings. On remand, the ALJ is directed to consider whether plaintiff's right arm and shoulder impairments were severe, whether they

persisted for twelve months or more, and whether they resulted in limitations in plaintiff's ability to perform work-related functions.

Because all of the medical opinions of record appear to have been rendered *prior* to the onset of plaintiff's arm and shoulder-related diagnoses and surgery, the ALJ is directed, as appropriate, to obtain additional medical treatment records and/or opinion evidence sufficient to perform a proper assessment of plaintiff's post-surgical limitations, if any.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 10, 2021.